UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DISCOVERORG DATA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> QUANTUM MARKET RESEARCH INC., <br><br> Defendant. | CASE NO. C19-5656 BHS <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant Quantum Market Research, Inc's ("Quantum") motion to dismiss for lack of personal jurisdiction. Dkt. 8. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff DiscoverOrg Data, LLC ("DiscoverOrg") provides sales and marketing information for business to business sales. Dkt. 1. DiscoverOrg's claims stem from its allegation that Quantum "stole access to DiscoverOrg information (about 9,300 records) and used them for its own sales and marketing, without paying DiscoverOrg any

licensing fees." *Id*. DiscoverOrg is a limited liability company with its principal place of business in Vancouver, Washington, and Quantum is a Delaware corporation with its principal place of business in Nebraska. *Id*. ¶¶ 1–2.

Relevant to the instant motion, DiscoverOrg's Corporate Counsel James Henry ("Henry") declares that starting in July 2017, "Quantum personnel were engaged in sales discussions with DiscoverOrg personnel." Dkt. 11 at 4 (citing Dkt. 12, ¶ 4.). These conversations occurred by phone and email and continued through at least November 2017. *Id*. (citing Dkt. 12, ¶ 4–5). Henry further declares that DiscoverOrg sales personnel frequently disclose DiscoverOrg's Vancouver, Washington location on sales calls, and that DiscoverOrg emails sent to Quantum included phone numbers with Washington area codes. *Id*. (citing Dkt. 12, ¶¶ 6–7). From October 27, 2017 to November 4, 2017, Quantum used DiscoverOrg's database with permission through "a one-week trial with access of two user seats." *Id.* at 4–5 (citing Dkt. 12, ¶ 8). Quantum did not purchase a license to access DiscoverOrg's database after the trial license expired. *Id*. at 5 (citing Dkt. 12, ¶ 9).

Next, DiscoverOrg Compliance Analyst Jie Smith ("Smith") declares that three IP addresses linked to Quantum accessed DiscoverOrg's database without authorization in November 2017. *Id*. (citing Dkt. 13, ¶¶ 5–6). Smith declares that Quantum ran searches, viewed proprietary information, downloaded over 9,300 records, and used these records to sell its products. *Id*. (citing Dkt. 13, ¶¶ 6–7). Whenever Quantum accessed DiscoverOrg's login page, it "was presented with a link to DiscoverOrg's End User License Agreement." *Id*. (citing Dkt. 13, ¶ 8). DiscoverOrg's Director of Customer

Support Will Hinrichs declares that the only way Quantum could have accessed the allegedly stolen records was by using the login credentials of a DiscoverOrg licensee, and that "DiscoverOrg's website also contains multiple notifications that DiscoverOrg is based in Washington." *Id.* (citing Dkt. 15, ¶¶ 9–10).

On July 18, 2019, DiscoverOrg filed a complaint asserting claims for theft of trade secrets, misappropriation of trade secrets, misappropriation, copyright infringement, violation of the federal Computer Fraud and Abuse Act, trespass to chattels, unjust enrichment, intentional interference with contract, and negligence. Dkt. 1. On August 22, 2019, Quantum filed the instant motion to dismiss for lack of personal jurisdiction. Dkt. 8. On September 9, 2019, DisocverOrg responded. Dkt. 11. On September 13, 2019, Quantum replied. Dkt. 16. On September 16, 2019, DiscoverOrg filed notice of intent to surreply. Dkt. 17. On September 18, 2019 DiscoverOrg surreplied. Dkt. 18.

## II. DISCUSSION

**A.  Standard on a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)**

To determine whether it has jurisdiction over a defendant, a federal court applies the law of the state in which it sits, as long as that law is consistent with federal due process. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Washington allows the maximum jurisdictional reach permitted by due process. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Due process is satisfied when subjecting the entity to the court's power does not "offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]raditional notions of fair

play and substantial justice" require that a defendant have minimum contacts with the forum state before it may be haled into a court in that forum. *Int'l Shoe*, 326 U.S. at 316 (1945). The extent of those contacts can result in either general or specific personal jurisdiction over the defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citations omitted). "Additionally, any evidentiary materials submitted on the motion are construed in the light most favorable to the plaintiffs and all doubts are resolved in their favor." *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002).

Specific jurisdiction permits a district court to exercise jurisdiction over a nonresident defendant for conduct that "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). A defendant creates a substantial connection in a tort-based action when it purposefully directs its activities at the forum state, the lawsuit arises out of or relates to the defendant's forum-related activities, and the exercise of jurisdiction is reasonable. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("*Picot*"). Purposeful direction constitutes (1) an intentional action, (2) expressly aimed at the forum state, which (3) cause harm "the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1485–86 (9th Cir. 1993) (citing *Calder v. Jones*,

465 U.S. 783, 788–89 (1984)). In applying this test, the Court must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state." *Id*. at 290. However, the Supreme Court also explained in a footnote that *Walden* "does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translates into 'contacts' with a particular State." *Id*. at 290 n.9. In applying *Walden*, the Ninth Circuit found in *Picot* that contact between non-forum residents outside the forum which interfered with the plaintiff's contract and ability to access out-of-forum funds was not meaningfully tethered to the forum and created an injury that would "follow [the plaintiff] wherever he might choose to live or travel." *Picot*, 780 F.3d at 1215.

If the plaintiff establishes the first two factors, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). These considerations include the extent of the defendant's purposeful interjection into the forum, the burden on the defendant, conflict of sovereignty with the defendant's state, the forum state's interest, judicial efficiency, the importance of the forum to the plaintiff's interest in convenient and effective relief, and the possibility of alternate forums. *Id*. (citing *Core-Vent*, 11 F.3d at 1487–88).

The parties agree that DiscoverOrg seeks to establish specific personal jurisdiction over Quantum and alleges tort-based claims. Dkt. 8 at 6–7; Dkt. 11 at 6.

**B.     Merits of Specific Jurisdiction**

Regarding purposeful direction and whether the lawsuit arises out of the defendant's forum-related activities, in its motion Quantum generally denies that it has "engaged in any conduct that connects it to the state of Washington in any meaningful way." Dkt. 8 at 6 (citing Dkt. 9, Declaration of Quantum CEO Greg Harris ("Harris"), ¶¶ 5–14). Quantum argues that DiscoverOrg fails to identify specific actions which took place in Washington, meaning that like *Walden*, the alleged wrongdoing is not sufficient to support jurisdiction because it only affected "plaintiffs with connections to the forum state" instead of showing the defendant formed a connection with the forum. *Id.* (citing *Walden*, 571 U.S. at 291). While DiscoverOrg argues that Quantum failed to contest the first two elements of the jurisdictional test in its motion, Dkt. 11 at 6, the Court finds that Quantum's argument, albeit brief, is that no harm can be found to arise out of its forum-related activity because it directed no conduct at Washington.

**1.     Purposeful Direction**

The parties do not appear to dispute whether the alleged improper login and removal of files would constitute an intentional act. Regarding express aiming, DiscoverOrg argues that theft from its website or servers is aimed at Washington in the same way it would be if that theft was from its physical office. Dkt. 11 at 7. In four post-*Walden* cases cited by DiscoverOrg, district courts considered the location of the plaintiff, the plaintiff's business if applicable, the defendant's knowledge of the

plaintiff's location and relationship with that location, and the plaintiff's servers when assessing specific personal jurisdiction. *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 500 (D.N.J. 2017) (sufficient for personal jurisdiction that defendant knowingly reached out to plaintiff and his computer in the forum to tortuously delete plaintiff's emails even though email provider housed its servers in a third state); *Motio, Inc. v. BSP Software LLC*, No. 3:16-CV-00331-O, 2016 WL 9559916, at *5 (N.D. Tex. May 27, 2016) (sufficient for personal jurisdiction that defendant used false online identity to steal plaintiff's intellectual property from plaintiff's company known to be in the forum even though the parties disputed whether the server housing the data was in the forum); *Microsoft Corp. v. Aventis Sys., Inc.*, No. C16-1234RSM, 2016 WL 6650996, *1–2 (W.D. Wash. Nov. 10, 2016) ("*Aventis*") (contacts sufficient for personal jurisdiction when defendant had small portion of sales in forum, sold one computer with plaintiff's unlicensed software to consumer in forum, knew plaintiff was located in forum, and repeatedly contacted plaintiff's servers in forum to activate unlicensed software); *Microsoft Corp. v. Mountain W. Computers, Inc.*, 2015 WL 447490, at *1 (W.D. Wash. July 22, 2015) ("*Mountain West*") (contacts sufficient for personal jurisdiction when defendants ordered plaintiff's software from third-party vendor located in forum and contacted plaintiff by telephone and through plaintiff's servers in forum to activate the software).

In reply, Quantum argues that *Aventis* and *Mountain West* show two critical factors not present here are required to support jurisdiction in internet torts: (1) the presence of the plaintiff's servers in the forum, and (2) additional contacts between the

defendant and the forum. Dkt. 16 at 4. Quantum argues the facts at bar are more similar to *Microsoft Corp. v. Comms & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1115 (W.D. Wash. 2015), where the defendant's only contact with the forum was internet contact with the plaintiff's servers to activate unlicensed software which the defendant had purchased elsewhere. *Id*. at 5. Quantum also contests DiscoverOrg's characterization of *DEX Sys., Inc. v. Deutsche Post AG*, 727 Fed. App'x 276 (9th Cir. 2018), *cert. denied sub nom. DHL Supply Chain v. DEX Sys., Inc.*, 139 S. Ct. 592 (2018) ("*DEX*"). *Id.* at 4. While DiscoverOrg argues that *DEX* shows jurisdiction is proper when a defendant software licensee's contacts with the forum occur in the form of contacts with the plaintiff's servers in the forum after the license expires, Dkt. 11 at 8, Quantum argues that *DEX* shows that establishing plaintiff's servers were located in the forum and defendant knew where the servers were located is critical to the jurisdictional analysis. *Id*. at 4–5.

In surreply, DiscoverOrg asks the Court to strike Quantum's argument that a server located in the forum is critical, arguing that Quantum did not raise this point in its motion. Dkt. 18 at 1–2 (citing, inter alia, *Quinstreet, Inc. v. Ferguson*, 2008 WL 5102378, at *4 (W.D. Wash. Nov. 25, 2008)). While the Court agrees that the server argument was not raised in Quantum's motion, the Court agrees with DiscoverOrg that server location is only one factor courts consider and is not dispositive. Therefore, the Court denies the motion to strike as moot.

The Court concludes that Quantum's discussions with DiscoverOrg sales personnel and trial use of DiscoverOrg's service leading up to the alleged unauthorized login and theft of records were not random or attenuated and meet the threshold for

contacts sufficient to support DiscoverOrg's burden on express aiming and harm suffered in the forum state. Specifically, Quantum's contact with Washington was not limited to the discrete incident of online theft—leading up to the alleged theft, Quantum personnel conducted conversations with DiscoverOrg personnel by phone and email for nearly two months and accessed DiscoverOrg's extensive website services with permission for a full week. On this basis, Quantum knew or should have known DiscoverOrg was located in Washington and specifically directed its conduct at DiscoverOrg as an entity established in Washington, doing business in Washington, and suffering the resulting harm in Washington. Wherever DiscoverOrg's servers are located, the Washington location of DiscoverOrg's physical offices and personnel outweigh the server location on these facts. Moreover, the Court finds that unlike *Picot* where harm directed at a forum resident and experienced through his lack of access to out-of-state funds would be felt "wherever he might choose to live or travel," 780 F.3d at 1215, DiscoverOrg and its operations are embedded in Washington, Quantum developed a relationship with DiscoverOrg, and then allegedly directed harm at DiscoverOrg which would be felt in those embedded operations in Washington and not elsewhere.

2.  **Fair and Reasonable Exercise of Jurisdiction**

Quantum emphasizes that the exercise of personal jurisdiction over it is not reasonable. Dkt. 8 at 6. Quantum cites *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) for the proposition that if a plaintiff has a weak case for the first two elements of personal jurisdiction, the defendant's burden on the third element is correspondingly lower. *Id*. at 6–7. The Court does not find the plaintiff's case sufficiently

weak that Quantum is relieved of its burden to make a compelling case that the exercise of jurisdiction would not be reasonable. *Harris Rutsky*, 328 F.3d at 1132.

Regarding the first reasonableness factor, Quantum argues it has no locations, property, employees, or business license in Washington and has not purposefully interjected itself into Washington's affairs. Dkt. 8 at 7. Regarding the second factor, Quantum argues it would be highly burdensome for it to defend this matter in Washington. *Id*. Regarding the fourth factor, Quantum argues that because no action took place in Washington, Washington has no interest in adjudicating the dispute. *Id*. Quantum argues the fifth factor, efficient judicial resolution, is neutral due to the advantage to DiscoverOrg and the disadvantage to Quantum. *Id*. Regarding the seventh factor, an alternate forum, Quantum argues "DiscoverOrg can bring its claims in a forum that is consistent with Quantum's due process rights." *Id*. at 8. DiscoverOrg counters that the events and the harm did occur in Washington, the burden on Quantum to defend in Washington is not excessive, the majority of the evidence is based either in DiscoverOrg's facilities or personnel in Washington, and an alternate forum would be unreasonable given Quantum's tortious conduct. Dkt. 11 at 11–12.

The Court finds that after weighing these factors, the outcome is neutral or close to it, and does not present a compelling case that jurisdiction is unreasonable. While there is a burden on Quantum to defend in a forum where it is not at home, it does appear that at least slightly more evidence would be found with DiscoverOrg's facilities and personnel having sustained the alleged intrusion, Washington has an interest in adjudicating alleged

torts against Washington-created intellectual property, and there is no apparent conflict of sovereignty between states.

The Court therefore concludes that DiscoverOrg has satisfied its burden to show specific jurisdiction should lie and Quantum has not presented a sufficiently compelling case that it should not.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Quantum's motion to dismiss for lack of personal jurisdiction, Dkt. 8, is **DENIED**.

Dated this 31st day of October, 2019.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge